# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CESAR MALDONADO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 8981 |
| v. ) | |
| ) | |
| OFFICER GARCIA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 25, 2014, Plaintiff Cesar Maldonado brought a three-count First Amended Complaint against Defendants Thomas J. Dart, Sheriff of Cook County, Correctional Officer Esteban Garcia, Superintendent Robert Lyles, Jr., and Executive Director Gary Hickerson alleging a Fourteenth Amendment due process deliberate indifference claim based on Defendant Officer Garcia's failure to protect (Count I), a failure to train claim against Defendant Officers Lyles, Hickerson, and Sheriff Dart pursuant to *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Count II), and an indemnification claim under 745 ILCS 10/9-102 against Cook County (Count III).

Before the Court is Defendants' motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Defendants' motion to strike Plaintiff's Northern District of Illinois Local Rule 56.1(b)(3) Response. For the following reasons, the Court grants Defendants' summary judgment motion and dismisses this lawsuit in its entirety. Further, the Court denies Defendants' motion to strike Plaintiff's Rule 56.1(b)(3) Response as moot because the Court considered Defendants' arguments within the context of each challenged fact.

## BACKGROUND

I.  **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner

dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). Also, the Court will not consider the additional facts set forth in Plaintiff's Rule 56.1(b)(3)(A) Response because any such facts must be in his Rule 56.1(b)(3)(C) Statement of Additional Facts. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008); *see also Sojka,* 686 F.3d at 398. With these standards in mind, the Court turns to the relevant facts underlying this lawsuit.

## II.     Relevant Facts

During the relevant time period, Maldonado was a pretrial detainee assigned to Division V, Tier 2-J at the Cook County Jail ("CCJ"), which houses medium-level classified detainees. (R. 31, Defs.' Rule 56.1 Stmt. Facts ¶ 5.) The September 25, 2012, incident underlying this lawsuit involves another detainee, Romain Oatis, who attacked Maldonado causing serious injury. (R. 44, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶¶ 3, 4, 43.) As a result of the attack, Maldonado was in a coma for five days and suffered severe head trauma making it necessary for doctors to remove part of his skull to relieve the pressure in his brain. (*Id.* ¶ 43.) Maldonado has a speech impediment, headaches, and memory loss resulting from the attack. (*Id.*)

On September 25, 2012, Maldonado left Tier 2-J in the morning and went to the law library with several other detainees. (Defs.' Stmt. Facts ¶ 8.) Once Maldonado returned from the library, Defendant Officer Garcia took him to the day room, although Officer Garcia was supposed to transport Maldonado to his cell on Tier 2-J, which is on the upper deck. (*Id.* ¶ 11; Pl.'s Stmt. Facts ¶ 6.) Officer Garcia took Maldonado to the day room because Officer Garcia did not have the necessary back-up to take Maldonado to his cell. (Pl.'s Stmt. Facts ¶ 7.)

At the time Officer Garcia took Maldonado back to the day room, detainees from the

lower deck were there. (*Id*. ¶ 10.) Pursuant to CCJ policy, detainees from the lower and upper decks are not allowed in the day room at the same time due to safety and efficiency concerns. (*Id*. ¶ 5; Defs.' Stmt. Facts ¶ 56.) Once Maldonado entered the day room, he had words with Oatis, after which the confrontation between them escalated. (Defs.' Stmt. Facts ¶¶ 29-30.) At the end of the fight, Maldonado was unconscious. (*Id*. ¶ 37.) A correctional officer then called an emergency "10-10," after which several other correctional officers responded and medical staff arrived. (*Id*. ¶¶ 41, 46, 47.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts."

4

*Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## ANALYSIS

**I.     Fourteenth Amendment Deliberate Indifference Claim – Count I**

In Count I of his First Amended Complaint, Maldonado brings an individual capacity claim against Officer Garcia asserting that Officer Garcia was deliberately indifferent in failing to protect him from Oatis' attack that caused him serious injury. Because Maldonado was a pretrial detainee during the relevant time period, his claim falls under the due process clause of the Fourteenth Amendment, which "impose[s] upon prison officials a duty to protect inmates from violent assaults at the hands of fellow prisoners." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). To clarify, "a prison has a duty to its inmates to protect them against violence by other inmates because imprisoning a person blocks his access to forms of self-protection and police protection that he would have on the outside." *Glade ex rel. Lundskow v. United States,* 692 F.3d 718, 722 (7th Cir. 2012); *see also Farmer,* 511 U.S. at 833. This "duty is violated only by deliberate indifference to a known substantial risk." *Smith v. Sangamon County Sheriff's Dep't,* 715 F.3d 188, 191 (7th Cir. 2013); *see also Farmer*, 511 U.S. at 835 ("deliberate indifference describes a state of mind more blameworthy than negligence"). To establish deliberate indifference, Maldonado must show that Officer Garcia was actually aware of a substantial risk of harm to Maldonado's safety, and yet, failed to take the appropriate steps to protect Maldonado from the harm. *See Smith,* 715 F.3d at 191; *Klebanowski*, 540 F.3d at 639.

Viewing the facts and all reasonable inferences in Maldonado's favor, there is no doubt that he suffered significant injuries as a result of Oatis' unfortunate attack. That being said, the

5

undisputed evidence reveals that Officer Garcia did not have actual knowledge and was not aware of the substantial risk that Oatis, or any other detainee, would violently attack Maldonado. *See Tidwell v. Hicks,* ___ F.3d ___, 2015 WL 3937549, at *3 (7th Cir. June 26, 2015) (plaintiff's "burden in establishing a failure-to-protect claim" requires plaintiff "to show, either through direct or circumstantial evidence, that the defendants had actual knowledge that he was at serious risk of being harmed."). More specifically, Maldonado testified that prior to the incident, he was never scared of Oatis and never told any CCJ officer that he was scared of Oatis. (Defs.' Stmt. Facts ¶¶ 20, 21.) In fact, at his deposition, Maldonado testified that prior to the incident, he "never had a problem with [Oatis] so there would be no reason for me to be scared of him." (R. 31-2, Ex. II, Maldonado Dep., at 22.) Also prior to the incident on September 25, 2012, Maldonado never asked for protective custody from Oatis or any other detainee on his tier. (Defs.' Stmt. Facts ¶ 23.) Indeed, at no point either before or after the attack did Maldonado ask for protective custody or voice concerns that he was in fear of his safety at the CCJ. (*Id.* ¶ 24.)

Furthermore, the only evidence in the record suggesting that Oatis had a history of violence is the hearsay testimony of another detainee, Cortez Spearman, who based his statement on what other detainees had told him. *See Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) ("unsubstantiated, hearsay assertion [] is insufficient to defeat summary judgment"). Moreover, Spearman's testimony, namely, that other detainees told him that Oatis was known to be violent, is too speculative to defeat summary judgment. *See Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014) ("speculation, hunches and intuition cannot defeat summary judgment"). Moreover, Maldonado does not point to any evidence in the record that Spearman conveyed this hearsay to Defendant Garcia or any other correctional officers. Similarly, Maldonado's argument that the

6

fight between Oatis and Maldonado was due to Maldonado's lack of gang affiliation, making the attack foreseeable, is also unsubstantiated and speculative. *See Matthews v. Waukesha Ctny.,* 759 F.3d 821, 824 (7th Cir. 2014) (Although plaintiff "is entitled to the benefit of reasonable inferences, that does not extend to inferences that are supported only by speculation or conjecture."). Likewise, the fact that despite the CCJ's policy, Maldonado and Oatis, who were detainees from different tiers, were in the day room at the same time does not raise a reasonable inference that Officer Garcia was aware of the substantial risk of an attack against Maldonado because a general risk of violence cannot establish knowledge of a substantial risk of harm. *See Shields v. Dart,* 664 F.3d 178, 181 (7th Cir. 2011) (per curiam); *Dale v. Poston,* 548 F.3d 563, 568 (7th Cir. 2008); *see also Ebrahime v. Dart,* 899 F.Supp.2d 777, 785 (N.D. Ill. 2012) ("While there is always a general risk of violence at a place like the Cook County Jail, that is not enough to establish knowledge of a substantial risk of harm.").

Accordingly, Maldonado has failed to present sufficient evidence creating a genuine issue of material fact for trial that Officer Garcia knew of a substantial risk of serious injury to him. In other words, Maldonado did not offer evidence that would put Officer Garcia or other correctional officers on notice of any risk of serious harm to him. *See Rice v. Correctional Med. Servs.,* 675 F.3d 650, 669 (7th Cir. 2012). Because Maldonado has failed to establish that Officer Garcia had knowledge of the substantial risk of harm, the Court need not address whether Officer Garcia took appropriate measures to protect Maldonado from the harm. *See Smith,* 715 F.3d at 191. The Court therefore grants Defendants' summary judgment motion as to Count I of the First Amended Complaint.

II.    **Monell Claim – Count II**

7

In Count II of his First Amended Complaint, Maldonado brings an official capacity claim based on the failure to train and supervise under *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To recover under *Monell*, Maldonado must establish that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was (3) the cause of his constitutional injury. *See King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). In relation to failure to train claims, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson,* ___ U.S. ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). As with all *Monell* claims, Maldonado must show that Defendants' custom or policy was the moving force behind his constitutional deprivation. *See Rice,* 675 F.3d at 675.

Although Maldonado alleged a failure to train and supervise claim in his First Amended Complaint and Defendants addressed this argument in their opening brief, in response to Defendants' summary judgment motion, Maldonado all but abandons this theory of liability.[1] Rather, he argues that there were three widespread unofficial customs and gaps in the official policies that caused his assault, including that (1) the correctional officers often leave the

---

[1] Specifically, in his response brief, Maldonado argues that "a jury would also be able to infer the remaining allegations in Count II of his complaint: that Cook County failed to supervise and train its officers; that Cook County overlooked and covered up officer misconduct; and that Cook County did not discipline officers for their conduct." (R. 46, Resp. Brief, at 18.) These cursory and unsubstantiated arguments are waived. *See Ripberger v. Corizon, Inc.,* 773 F.3d 871, 879 (7th Cir. 2014). Also, Maldonado does not discuss the relevant failure to train standard under *Connick* and *Canton*.

detainees unsupervised in the day room in violation of the Cook County Department of Corrections ("CCDOC") Division V Orientation Handbook; (2) the correctional officers place detainees of the opposite tier in the day room at the same time in contradiction of the CCDOC Handbook; and (3) the correctional officers frequently did not have backup to take the detainees to their cells. Maldonado also points to gaps in the CCDOC policies, including that there are no manuals on how to supervise the day room and no orders on how to transfer inmates from their cells to the law library.

To establish that Defendant Sheriff Dart is liable in relation to Maldonado's Fourteenth Amendment failure to protect claim, Maldonado must present evidence that final policymakers for the Sheriff's Office were aware that these unofficial customs and gaps in policy created a serious risk of harm to the detainees, and yet failed to rectify them. *See Smith,* 715 F.3d at 192; *Guzman v. Sheahan,* 495 F.3d 852, 859 (7th Cir. 2007). Construing the facts and all reasonable inferences in his favor, Maldonado has failed to present evidence that Sheriff Dart had notice or knowledge that these unofficial customs and alleged gaps existed in the first instance. There is no evidence, for example, that the custom of leaving detainees unsupervised and mixing the two tiers from Division V in the day room–or that the officers had insufficient backup to return detainees to their cells–were communicated to the CCJ policymakers before Oatis attacked Maldonado. *See Smith,* 715 F.3d at 192-93. Indeed, Maldonado makes no mention of Sheriff Dart's knowledge regarding the unofficial customs and gaps in his Local Rule 56.1(b)(3)(C) Statement of Additional Facts. In addition, Maldonado does not argue, let alone establish, that risk of serious harm resulting from these unofficial customs and gaps was so patently obvious that the Sheriff's Office must have been aware of the risk. *See Smith,* 715 F.3d at 192 (citing

*Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)).

Instead, Maldonado presents evidence that Defendant Superintendent Robert Lyles testified about the proper procedures regarding detainees from the upper and lower tiers and supervision in the day room. Nevertheless, Maldonado does not present evidence that Defendant Lyles knew that the correctional officers mixed the two tiers or that on occasion correctional officers were not supervising the detainees in the day room. *See Guzman,* 495 F.3d at 859 ("In order to show deliberate indifference, the cognizant official must have known of a substantial risk of serious injury and consciously must have disregarded that risk.").

Equally important, Maldonado does not set forth any evidence that Defendant Lyles–or Defendant Executive Director Gary Hickerson[2]–are a final policymakers, as required to establish liability under *Monell. See Celotex,* 477 U.S. at 322 ("plain language of Rule 56[ ] mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). To clarify, whether a public official has final policymaking authority is based on state law and turns on whether his or her decisions are reviewed by a higher official or authority. *See Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780-81 (7th Cir. 2011). In Illinois, "sheriffs have the final policymaking over jail operations," *DeGenova v. Sheriff of DuPage Cnty.,* 209 F.3d 973, 976 (7th Cir. 2000), therefore, Sheriff Dart necessarily reviews any policy decisions made by Defendants Lyles and Hickerson under Illinois law. *See Guzman,* 495 F.3d at 859; *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1013 (7th Cir. 2000).

---

[2] Maldonado makes no mention of Defendant Hickerson in his Local Rule 56.1(b)(3)(C) Statement of Additional Facts.

Because Maldonado has failed to present evidence creating a genuine issue of material fact for trial that Defendant Sheriff Dart was on notice or had knowledge of the three unofficial customs and the gaps in policy that Maldonado highlights, the Court need not address Maldonado's argument that these practices were the moving force behind the denial of his constitutional rights. The Court therefore grants Defendants' summary judgment motion as to Count II of the First Amended Complaint.

On a final note, because Maldonado has failed to present evidence raising an issue of material fact for trial regarding his Fourteenth Amendment claim and the attendant *Monell* claim, the Court need not consider the parties' arguments regarding Maldonado's indemnification claim as alleged in Count III of the First Amended Complaint.

## CONCLUSION

For these reasons, the Court grants Defendants' motion for summary judgment in its entirety and denies Defendants' motion to strike as moot. Civil case terminated.

**Dated:** July 22, 2015

                                           **ENTERED**

                                           */s/ Amy J. St. Eve*

                                           **AMY J. ST. EVE**
                                           **United States District Court Judge**